**ORAL ARGUMENT NOT YET SCHEDULED**

No. 23-5237

---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

FARAH NAZ,

*Appellant*,

v.

JENNIFER M. GRANHOLM, SECRETARY OF THE
U.S. DEPARTMENT OF ENERGY,

*Appellee*.

---

On Appeal from the United States District Court
for the District of Columbia (Judge Dabney L. Friedrich)

---

**BRIEF OF COURT-APPOINTED *AMICUS CURIAE*
IN SUPPORT OF APPELLANT**

Anthony F. Shelley
  *Counsel of Record*
Cody F. Marden
Miller & Chevalier Chartered
900 Sixteenth St. NW
Washington, DC 20006
Telephone:  (202) 626-5800
Facsimile:  (202) 626-5801
Email:  ashelley@milchev.com
          cmarden@milchev.com

July 29, 2024                    *Court-Appointed Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### LIST OF PARTIES AND *AMICUS CURIAE*

Appellant is Farah Naz.  Appellee is Jennifer M. Granholm, Secretary of the U.S. Department of Energy.  The *Amicus Curiae* in support of Appellant is court-appointed counsel, Anthony F. Shelley of Miller & Chevalier Chartered.

### RULINGS UNDER REVIEW

The ruling under review is the District Court's dismissal of Plaintiff-Appellant's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.  The District Court's Order and Memorandum Opinion are provided in the *amicus*'s Appendix ("AA") at AA307, AA308-19.  The District Court's Order and Memorandum Opinion are unpublished, *see Naz v. Granholm*, No. 22-CV-1730, 2023 U.S. Dist. LEXIS 176384 (D.D.C. Sept. 30, 2023).

### RELATED CASES

The *amicus* is not aware of any related cases.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF AUTHORITIES ...................................................................................iii

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF ISSUE PRESENTED FOR REVIEW .......................................1

RELEVANT STATUTES AND REGULATIONS ...................................................2

STATEMENT OF THE CASE .................................................................................2

    A.    The Allegations in the Complaint ......................................................2

    B.    Proceedings Below and in This Court ................................................9

SUMMARY OF ARGUMENT.................................................................................12

STANDARD OF REVIEW .....................................................................................13

ARGUMENT ..........................................................................................................13

I.    THE DISTRICT COURT ERRED BY MISAPPLYING TITLE VII's CAUSATION ANALYSIS TO MS. NAZ's TERMINATION AND RETALIATION CLAIMS. ..................................................................13

II.    THE DISTRICT COURT ERRED IN DISMISSING MS. NAZ's FAILURE TO PROMOTE CLAIM...............................................................21

CONCLUSION .......................................................................................................24

Certificate of Compliance with Rule 32(a) .........................................................*Post*

Certificate of Service...........................................................................................*Post*

## TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020) ........................................................14, 15, 16, 18, 19, 21

*Chambers v. District of Columbia*,
  35 F.4th 870 (D.C. Cir. 2022) .........................................................22

*Howard R.L. Cook & Tommy Shaw Found. for Black Emps.*
  *of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767 (D.C. Cir. 2013)..................14

*Kim v. United States*,
  632 F.3d 713 (D.C. Cir. 2011)..........................................................13

*Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*,
  52 F.3d 373 (D.C. Cir. 1995).......................................16, 17, 19, 22, 23

*Mitchell v. Baldrige*,
  759 F.2d 80 (D.C. Cir. 1985)..........................................................16

*Morgan v. Fed. Home Loan Mortg. Corp.*,
  328 F.3d 647 (D.C. Cir. 2003).........................................................23

*Pueschel v. Chao*,
  955 F.3d 163 (D.C. Cir. 2020).........................................................16

*Rochon v. Gonzales*,
  438 F.3d 1211 (D.C. Cir. 2006).....................................................16, 18

*Stella v. Mineta*,
  284 F.3d 135 (D.C. Cir. 2002).........................................................23

*Taylor v. Small*,
  350 F.3d 1286 (D.C. Cir. 2003).......................................................22

---

[*] Authorities chiefly relied upon are marked with an asterisk.

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ................................................................................14

*Vance v. Chao*,
   496 F. Supp. 2d 182 (D.D.C. 2007)..........................................................16

*Wiley v. Glassman*,
   511 F.3d 151 (D.C. Cir. 2007)..................................................................19

**Statutes**

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

Civil Rights Act of 1964,
   Title VII, 42 U.S.C. §§ 2000e, *et seq.* ..............................1, 2, 3, 9, 11, 14, 16, 22

**Other Authorities**

Fed. R. Civ. P. 12.................................................................................1, 13, 16

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Farah Naz invoked the District Court's jurisdiction pursuant to 28 U.S.C. § 1331, which is the general federal-question statute. She filed her Complaint in the District Court thereafter on June 16, 2022. In the Complaint, Ms. Naz sued the Secretary of the U.S. Department of Energy, along with officials at several offices and agencies within the Department of Energy, for discriminating and retaliating against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* AA7-31. Prior to filing suit, Ms. Naz exhausted all of her available federal administrative remedies; she had filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 4, 2021, and received a Notice of Right to Sue letter on May 23, 2022, less than one month before bringing this action. AA12. The District Court dismissed her Complaint on September 30, 2023, so that her timely appeal thereafter provided this Court with jurisdiction under 28 U.S.C. § 1291. AA320 (Notice of Appeal).

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

Whether the District Court properly dismissed Ms. Naz's Title VII claims for failing to state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## RELEVANT STATUTES AND REGULATIONS

Title VII of the Civil Rights Act of 1964 – 42 U.S.C. §§ 2000e *et seq.* – is set out in full in the Addendum immediately following this brief.

## STATEMENT OF THE CASE

### A.    The Allegations in the Complaint

Ms. Naz is a Muslim woman of Pakistani origin.  AA11; AA16 ¶ 3.  She has two graduate degrees, including a master's degree in financial economics for public policy from American University.  *See* AA14 ¶ 2.

Ms. Naz worked successfully as an economist for over two decades in various roles at the Departments of Commerce and Energy.  *Id.* ¶ 3.  She alleges she never had any issue with her work until she took a position as an industrial economist with the Office of Energy Consumption and Efficiency Analysis at the Department of Energy ("Department") on January 8, 2017.  AA14 ¶ 1, AA16 ¶¶ 1-2.  Like the preceding two decades, the first fifteen months of Ms. Naz's tenure in her new office initially proceeded smoothly.  She reported to Dr. Kelly Perl, another economist and her section chief, with whom Ms. Naz enjoyed a "cordial and productive relationship."  *Id.* ¶ 5.  Ms. Naz also reported to a second-line supervisor, James Turnure, the director of her section.  AA17 ¶ 14.  Ms. Naz alleges that, unfortunately, her productive relationship with Dr. Perl and Mr. Turnure ended when she later became subject to discrimination, retaliation, and

- 2 -

other reprisals for engaging in an activity protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").  AA16 ¶ 5.

Ms. Naz worked "close[ly]" on joint assignments with a third colleague, Christopher Dickerson, who was on the same Department team and relatively new to the Department.  *Id.* ¶ 6.  In October 2017, Ms. Naz testified on Mr. Dickerson's behalf in a race discrimination action he filed against Dr. Perl through an Equal Employment Opportunity (EEO) complaint.  *Id.* ¶ 4.  Ms. Naz's testimony "spoke out against the rampant race discrimination that pervades the [Department]."  AA14 ¶ 5.

Dr. Perl somehow learned that Ms. Naz testified against her in April 2018, and Ms. Naz alleges that from that point on, her work life underwent a "sea change."  AA16 ¶ 8.  Dr. Perl's attitude toward Ms. Naz became "hostile, antagonistic, and unproductive."  *Id.*  Dr. Perl threatened to fire Ms. Naz on multiple occasions, bragged about firing other employees, and "screamed at and threatened to fire" Ms. Naz over what Ms. Naz alleges was an objectively reasonable hotel reservation (*i.e.*, occurring at the government per-diem rate) for a work conference.  AA16-17 ¶¶ 8-10, 12-13.  Dr. Perl also "told [Ms. Naz] that 'non-native people' like [Ms. Naz] 'have difficulty' writing[] and asked [Ms. Naz] whether she had attended school in the United States."  AA16 ¶ 11.  All of these incidents occurred in April 2018, immediately after Dr. Perl learned of Ms. Naz's

testimony.  The treatment was bad enough that Ms. Naz asked Mr. Turnure for a transfer to a different supervisor in April 2018.  AA17 ¶ 14.  She set up meetings with other managers at other federal agencies to discuss transfer possibilities, but Dr. Perl "badmouth[ed]" Ms. Naz, suggesting that she would be "spend[ing] [their] valuable time complaining," and instructing them to decline Ms. Naz's transfer invitations.  *Id.* ¶¶ 15-16.  Ms. Naz alleged that as a result of Dr. Perl's negative behavior, she was not able to transfer.  *Id.* ¶ 16.

Dr. Perl continued a similar course of behavior against Ms. Naz well after this initial barrage of incidents.  Several months later, Ms. Naz asked Dr. Perl to nominate her for an award and provided Dr. Perl with achievements that supported her nomination.  *Id.* ¶ 17.  Dr. Perl declined, telling Ms. Naz:  "Please let me do the nominations from now on."  *Id.* ¶ 22.  Dr. Perl also denied Ms. Naz's requests for Excel or leadership training, too.  *See* AA18 ¶¶ 23-24.

In late 2018, Ms. Naz began to get negative feedback on her work product for the first time.  In August, Dr. Perl deemed a paper written by Ms. Naz to be inadequate.  *Id.* ¶ 26.  Before she testified in support of Mr. Dickerson, however, Ms. Naz had submitted another paper to Dr. Perl "in a substantially similar style and manner and received no such critical feedback."  *Id.* ¶ 27.  In November 2018, Dr. Perl gave Ms. Naz a "Fails to Meet Expectations" rating during a performance review for her alleged writing deficiencies.  *Id.* ¶ 28.  Ms. Naz again requested a

transfer from Mr., Turnure, but did receive one.  *Id.* ¶ 29.  In December 2018, Dr.

Perl placed Naz on a 90-day "Performance Improvement Plan" due to the alleged

writing deficiencies, even though the complained-of paper should have accounted

only minimally toward the total writing element of her evaluation, with the writing

element, in turn, constituting just 20% of her annual evaluation.  *Id.* ¶¶ 31-33.  Dr.

Perl also told Ms. Naz that she "had forfeited her right to participate" in alternative

work schedules and telework because of her alleged writing deficiencies.  *Id.* ¶ 34.

The same month, December 2018, Ms. Naz finally filed an EEO complaint and a

complaint through the National Treasury Employees Union ("NTEU"), alleging

that Dr. Perl was discriminating and retaliating against her for testifying against

Dr. Perl in favor of Mr. Dickerson.  AA19 ¶¶ 35-37.

According to Ms. Naz's allegations, her formal complaints against Dr. Perl

did not, however, stop the discrimination and retaliation she was experiencing.  In

January 2019, Ms. Naz resubmitted the paper Dr. Perl had criticized.  *Id.* ¶ 38.  The

same month, Dr. Perl responded by giving Ms. Naz another and even lower rating

– "failing."  *Id.* ¶ 39.  Dr. Perl then denied more of Ms. Naz's requests for training,

stating on one such occasion that Ms. Naz "could not comprehend the material."

*See* AA19-20 ¶¶ 40-44, 46, 48.  Ms. Naz specifically told Dr. Perl that she believed

these denials were retaliation intended to create a hostile work environment.  AA19

¶ 43.  In March 2019, Dr. Perl "accus[ed] [Ms. Naz] of excessive frowning" and

"raised her voice, refused to allow [Ms. Naz] to explain herself, slammed her hand on her desk several times, and at the end of the meeting screamed at [Ms. Naz] to get out of her office." *Id.* ¶ 45.

Also in March 2019, Dr. Perl was removed as Ms. Naz's supervisor and was assigned to a new position of Senior Researcher within the same office, *see id.* ¶ 47, but Ms. Naz was still subject to supervision of Mr. Turnure, who immediately placed Ms. Naz on another performance improvement plan in April 2019. AA20 ¶ 52. At no point prior to the PIP had Mr. Turnure directly supervised Ms. Naz. *Id.* ¶ 55. Mr. Turnure and Dr. Perl were friends and poked fun at Ms. Naz behind her back, according to Ms. Naz. *Id.* ¶ 50. Ms. Naz had asked for a union representative to be available at the meeting where she was placed on the new performance improvement plan, but Mr. Turnure refused. *Id.* ¶¶ 53-54. In May 2019, he also took away Ms. Naz's ability to do an alternative work schedule or telework. *Id.* ¶ 57. Ms. Naz told Mr. Turnure that she thought these benefits had been taken away because she was a minority woman. *Id.* ¶ 59. And, later, in September 2019, in her annual performance review, he gave Ms. Naz failed ratings. AA21 ¶ 69.

Meanwhile, a new supervisor to whom Ms. Naz now reported, Peter Gross, who knew Ms. Naz had filed an EEOC complaint against Dr. Perl, also suddenly began finding issues with Ms. Naz's work. AA20 ¶ 49. In May 2019, Mr. Gross

- 6 -

failed Ms. Naz for an assignment Ms. Naz maintains she adequately completed. *Id.* ¶ 58. In June 2019, Mr. Turnure appointed Mr. Gross as the new acting lead for Ms. Naz's team. *Id.* ¶ 61. Almost immediately, Mr. Gross told her, on June 12, 2019, that she would be the only member of her team to report to him "for a long time." *Id.* In July 2019, Mr. Gross told Ms. Naz her work product was "deficient and inadequate" and that her calculations were incorrect, despite overseeing her for less than a month. AA20-21 ¶¶ 62, 64. He also began to "bully" Ms. Naz, to "micromanage" her, to "misinform [her] about her projects," and to "tweak[] assignments . . . , sending different instructions every time [Ms. Naz] asked [him]" for clarification or elaboration on instructions. AA21 ¶¶ 63-68. In October 2019, Ms. Naz filed an EEO complaint against Mr. Gross. *Id.* ¶ 70. Mr. Gross also "deliberately kept meetings on [Ms. Naz's] busy working days," "sent long emails to [Naz] so that she would become distracted," and assigned "extraordinary amounts of work on unrealistic deadlines." *Id.* ¶¶ 74-76. In October 2019, Ms. Naz filed an EEO complaint against Mr. Gross. AA22 ¶ 80. In January 2020, Mr. Gross denied Ms. Naz an automatic salary-grade increase from GS-12 Step 8 to GS-12 Step 10, an increase that is available to all federal employees based on years of service. AA21 ¶ 71.

In April 2020, Ms. Naz was placed on another "performance demonstration period plan" – essentially, another performance improvement plan. *Id.* ¶ 73. In

June 2020, Ms. Naz learned that she would get another "Fails to Meet Expectations" rating. AA22 ¶ 77. In August 2020, the Department issued her a Notice of Proposed Removal for "failure to successfully complete" the performance demonstration period plan. *Id.* ¶ 78. In October 2020, Mr. Gross held a performance review meeting in which he "was verbally abusive and constantly belittled, humiliated, and insulted [Ms. Naz's] performance with negative comments." *Id.* ¶ 79. The stress this caused was so significant that, the following day, Ms. Naz suffered a Transient Ischemic Attack, which is essentially a minor stoke. In November 2020, she was transferred (along with several other employees) to another section in the Department as a result of an agency-wide reorganization along with other employees. *See* AA11.

The Department ultimately terminated Ms. Naz's employment on January 29, 2021. *Id.*; *see also* AA22 ¶ 81. She sought review of her termination with the federal government's Merit Systems Protection Board ("Board"), which decided that she had not established discrimination had led to her termination. AA23. Later in 2021, Ms. Naz appealed the Board's decision to the Equal Employment Opportunity Commission ("EEOC"), and the EEOC affirmed the Board's decision. AA23-27. It issued to Ms. Naz a Notice of Right to Sue letter in May 2022. AA26.

**B.     Proceedings Below and in This Court**

Ms. Naz filed the instant action *pro se* in the District Court on June 16, 2022.  She alleges that the Department discriminated and retaliated against her on the bases of her race, sex, religion, and national origin in violation of Title VII.  AA11.  She specifically complains about the termination of her employment, the failure to promote her, and the retaliation and reprisals she experienced.  *Id.*  She seeks reinstatement, reassignment, lost wages and benefits, and $300,000 in compensatory damages, among other relief.  AA12. Defendants-Appellees responded by filing a motion to dismiss or, in the alternative, for summary judgment.  AA32.

The District Court entered a Memorandum Opinion and accompanying Order, granting the Defendants-Appellees' motion, dismissing Ms. Naz's claims. *See* AA307, AA308-19.

The District Court dismissed Ms. Naz's termination claim, because, "[s]imply put, the complaint gives rise to no plausible inference that discrimination led to [Ms.] Naz's firing."  AA314.  It reasoned that "[t]here are only two facts that touch upon [Ms.] Naz's protected characteristics [under Title VII], neither of which suggests a discriminatory termination."  AA315.  First, the Complaint alleges that Dr. Perl told Naz in April 2018 that "'non-native people' like [Naz] 'have difficulty' writing." *Id.* (quoting AA16 ¶ 11) (alternation in original).  The

District Court found this was not a factor because, "at the time of her termination, [Ms.] Naz had transferred away from [Dr.] Perl and had been working under a different supervisor, Gross, for nearly two years" (though it actually was only thirteen months). *Id.* It added that the Complaint "does not allege that [Dr.] Perl was a decisionmaker in [Ms.] Naz's termination." *Id.* Second, the Complaint alleges that Ms. Naz told Mr. Turnure "that 'she thought' he had revoked her alternative scheduling privileges 'because she [was] a minority woman.'" *Id.* (quoting AA20 ¶ 59). The District Court reasoned this "proves merely that [Ms.] Naz *believed* she was the victim of discrimination, not that she was." AA315. It identified no other facts touching on Ms. Naz's Title VII-protected characteristics.

The District Court interpreted that Ms. Naz's failure to promote claim "occurred when Gross denied [Ms.] Naz's salary increase to GS-12, Step 10, in January 2020." *Id.* It reasoned Ms. Naz failed to allege that "she sought and was denied a promotion for which she was qualified[] and that other employees of similar qualifications . . . were indeed promoted at the time the plaintiff's request for promotion was denied." AA316 (internal quotation marks and citation omitted) (alterations in original). The District Court commented that the Complaint only "alleges that the step increase should have been 'automatic,' but it does not mention any other employee who received that automatic promotion." *Id.* It also considered an "argument that [Ms.] Naz's placement on several performance-

- 10 -

related plans disqualified her from promotions to which she otherwise would have applied," but it reasoned the Department had a "legitimate reason[]" not to promote her because of her "placement on the performance plans and other job-related sanctions." *Id.*

Finally, the District Court rejected Ms. Naz's claim that she faced retaliation and reprisal for testifying in favor of Mr. Dickerson's EEO complaint, because it again found that Ms. Naz "failed to allege facts to support the third element of a Title VII claim: the presence of a causal link." AA317. It reasoned that Ms. Naz's "termination, the Department's denials of additional training, the denials of Naz's participation in the alternative work schedule and telework programs, and Gross's management style all constituted alleged retaliation." *Id.* But it found that too much time passed in between Ms. Naz's protected activity – her testimony in Mr. Dickerson's case – and complained-of retaliation and reprisals. It reasoned that "six months passed from [Ms.] Naz's testimony to the earliest inklings of a toxic work environment," and that Ms. Naz's Complaint "contains *no* facts that suggest the Department had a retaliatory motive." AA318.

This appeal followed on October 19, 2023. AA320. Following initial briefing on, and this Court's denial of, Defendants-Appellees' Motion for Summary Affirmance, the undersigned was appointed as *amicus* "to present arguments in favor

- 11 -

of [Ms. Naz's] position that *amicus* determines are potentially meritorious."
AA322-23.

## SUMMARY OF ARGUMENT

I.      Drawing all inferences in her favor, Ms. Naz should be entitled to  a
presumption that Defendants-Appellees' alleged discrimination led to her
termination, because she explains in detail how she began to experience years of
discrimination and reprisals shortly after she testified against her supervisor in a
colleague's racial discrimination case.  The District Court rejected the significance
of this temporal connection because it concluded Ms. Naz had failed to show
Defendants-Appellees were aware of her testimony.  However, this is exactly the
kind of reasonable inference that should be drawn in Ms. Naz's favor.  Regardless,
the allegations in her Complaint sufficiently allege that her testimony against her
supervisor was a "but-for" cause of the adverse employment actions she suffered.
Had it not been for that supervisor's initial discrimination, after Ms. Naz's
testimony, it is reasonable to infer from Ms. Naz's allegations that none of the
subsequent discrimination she experienced would have occurred.

II.      Ms. Naz stated a *prima facie* case for her failure to promote claim.
She alleged she was denied a salary increase from GS-12, Step 8 to GS-12, Step-10
that should have been "automatic."  The District Court rejected Ms. Naz's claim
because she failed to allege other employees received the step increase, but again,

- 12 -

she alleged that the step increase was automatic, and it is therefore reasonable to infer that *every* other employee who was eligible would have received it. Nonetheless, Ms. Naz need not establish a *prima facie* case for her promotion claim to proceed. She alleged Defendants-Appellees responded to an EEO complaint she filed against one of her supervisors by denying the automatic step increase. That is sufficient to state a claim. Ms. Naz was also disqualified from promotions because she was unfairly placed on performance improvement plans. The District Court concluded that she was placed on these plans because of poor work. But that was an impermissible jump to a conclusion, and it is reasonable to infer (with inferences in her favor, certainly) that Ms. Naz's poor performance reviews resulted from Defendants-Appellees' alleged discrimination, not her own shortcomings.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's a dismiss of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011).

## ARGUMENT

**I.    THE DISTRICT COURT ERRED BY MISAPPLYING TITLE VII'S CAUSATION ANALYSIS TO MS. NAZ'S TERMINATION AND RETALIATION CLAIMS.**

The District Court dismissed Ms. Naz's termination claim and her retaliation and reprisal claims because it found too much time passed (for the termination

claim) between the discrimination she experienced and her ultimate termination and (for the retaliation claim) between her protected activity and the ensuing retaliatory acts she experienced.  In other words, the District Court concluded that the passage of time prevented Ms. Naz from establishing the required causal link.  This view reads causation under Title VII too narrowly.  Ms. Naz alleges in detail how she testified in favor of Mr. Dickerson against Dr. Perl and how this caused her to experience years of discrimination and reprisals, the final – but not only – consequence of which was her termination by the Department after twenty years of federal civil service.  That is sufficient to allege causation under Title VII.

Beginning with retaliation, Ms. Naz established a *prima facie* case by showing "(1) that [she] engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. for Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013).  Regarding the third element, the causal link, while "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action," *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 352 (2013), the Supreme Court recently clarified that "[o]ften, events have multiple but-for causes." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020).  "When it comes to Title VII, the adoption of the traditional but-

- 14 -

for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id.* "So long as the [retaliation] was one but-for cause of that decision, that is enough to trigger the law." *Id.*

The District Court agreed that Ms. Naz satisfied the first two elements. AA315-16. She engaged in a protected activity by testifying in favor of Mr. Dickerson's EEO complaint against her supervisor, Dr. Perl, in October 2017, AA16 ¶ 4, and she suffered multiple adverse actions by her employer, the Department, in the ensuing multi-year period. She was, *inter alia*, unfairly criticized, AA16-21 ¶¶ 11-13, 25-27, 45, 58, 62-66, 68; denied transfers, AA17-18 ¶¶ 14-16, 29; denied achievements and promotions, AA17 ¶¶ 17-22; denied trainings, AA18-20 ¶¶ 23-24, 40-44, 46, 48; denied alternative work and telework benefits, AA19-21 ¶¶ 34, 57, 67, 72; denied promotions, AA21 ¶ 71; given poor reviews and persistently placed on performance improvement plans, AA18-22 ¶¶ 28, 30-32, 39, 52-55, 69, 73-77, 79; and – of course – terminated by the Department, AA22 ¶ 81.

The District Court nevertheless reasoned Ms. Naz could not establish a causal link between her testimony in favor of Mr. Dickerson and adverse actions she experienced. It reasoned there was no applicable presumption of causation because she did not allege that the Department "'had knowledge of the protected

activity and that the adverse action occurred soon thereafter.'"  AA317-18 (quoting

*Vance v. Chao*, 496 F. Supp. 2d 182, 186 (D.D.C. 2007) and citing *Rochon v.*

*Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006)).  It noted that "six months passed

from [Ms.] Naz's testimony [for Mr. Dickerson's EEO complaint] to the earliest

inklings of a toxic work environment."  AA318.  While the District Court

acknowledged that Ms. Naz was not required to rely on this presumption, it found

that she alleged "*no* facts that suggest the Department had a retaliatory motive."

*Id.*

The District Court's dismissal was in error because its conclusion reads both

the Complaint and causation under Title VII too narrowly, especially when all

inferences are drawn in Ms. Naz's favor.  And, of course, it is necessary to draw

inferences in her favor when considering a Rule 12(b)(6) motion.  *Maljack Prods.,*

*Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995).

***First***, with all inferences in Ms. Naz's favor, she should be entitled to a

presumption of causation.  "The causal connection component of the prima facie

case may be established by showing that the employer had knowledge of the

employee's protected activity, and that the adverse personnel action took place

shortly after that activity."  *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985).

This normally means a handful of months at most.  *Cf. Pueschel v. Chao*, 955 F.3d

163, 167 (D.C. Cir. 2020).  But here, Ms. Naz has alleged that the retaliatory

- 16 -

conduct occurred *immediately* after Dr. Perl learned of Ms. Naz's testimony against her. AA16 ¶ 8. She alleges that Dr. Perl learned of Ms. Naz's testimony in April 2018 and that, in the same month, she suddenly threatened to fire Ms. Naz, *id.* ¶¶ 9-10; told Ms. Naz that "non-native people" like Ms. Naz "have difficulty writing," *id.* ¶ 11; and screamed at Ms. Naz for booking a hotel "within the acceptable [rate] range" for a conference, AA17 ¶ 12. Other more significant retaliatory acts and reprisals followed from Dr. Perl and Ms. Naz's other supervisors, including placing Ms. Naz on performance improvement plans, AA18-20 ¶¶ 30-33, 52, taking away telework and alternative work arrangements, AA18-21 ¶¶ 34, 57, 67, 72; unfair performance reviews, AA19-21 ¶¶ 39, 69.

The District Court rejected the significance of this temporal connection because it concluded that Ms. Naz only "assumed that [Dr.] Perl learned of her October 2017 testimony in April 2018, but the complaint offers no facts that show that [Dr.] Perl or any other supervisor had actual knowledge that she had testified." AA318. However, this is exactly the kind of reasonable inference that should be drawn in Ms. Naz's favor. *See Maljack Prods.*, 52 F.3d at 375. She alleged that she enjoyed "an unblemished career of nearly two decades," AA14 ¶ 1, before she suddenly began suffering adverse employment actions in April 2018 upon testifying against Dr. Perl. Indeed, Ms. Naz alleges that she enjoyed a "cordial and productive relationship" with Dr. Perl prior to April 2018. AA16 ¶ 5. Given the

- 17 -

sudden strength of Dr. Perl's reaction against Ms. Naz in April 2018, and the absence of any prior complaint by Dr. Perl against Ms. Naz or her work, it is more than reasonable to infer that Dr. Perl learned of Ms. Naz's testimony for the first time in April 2018 and began retaliating against her as a result.

The District Court also erred by ignoring that Ms. Naz engaged in additional protected activity by filing her own EEO complaint against Dr. Perl in December 2018 and Mr. Gross in January 2020. AA19-21 ¶¶ 35, 70; *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006). These protected activities led to their own close-in-time reprisals. For example, in the month after Ms. Naz filed an EEO complaint against Dr. Perl, she gave Ms. Naz a "deficient and untimely performance review," AA19 ¶ 39, and denied multiple trainings, *id.* ¶¶ 40-41. A couple months after Ms. Naz filed her EEO complaint against Mr. Gross, he denied her automatic salary increase. AA21 ¶ 71.

*Second*, even if Ms. Naz is not entitled to a presumption of causation on her retaliation claim, the allegations in her Complaint sufficiently allege that her testimony against Dr. Perl was a "but-for" cause of the adverse employment actions she suffered. Ms. Naz's allegations of discrimination must be analyzed holistically. Title VII's "but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock*, 590 U.S. at 656. The District Court failed to do that here. If it had, the retaliatory

- 18 -

intent becomes clear.  Ms. Naz suffered a "sea change" at work when Dr. Perl learned of her testimony.  AA16 ¶ 8.  She had an "unblemished" record until that point.  AA14 ¶ 1.  No one had criticized her work, not even Dr. Perl.  AA16 ¶ 5.

The District Court rejected these allegations by interpreting Ms. Naz's Complaint as "a familiar story of disciplinary sanctions following repeated instances of substandard work."  AA319.  But the District Court should have drawn inferences in Ms. Naz's favor.  *Maljack Prods.*, 52 F.3d at 375.  It is reasonable to infer that Ms. Naz's sudden streak of disciplinary actions resulted from the complained-of discrimination, not her own shortcomings.  And, regardless, "liability [cannot be avoided] just by citing some other factor that contributed to [a defendant's] challenged employment decision."  *Bostock*, 590 U.S. at 656 (emphasis omitted).

The District Court, in sum, erred in dismissing Ms. Naz's retaliation claims for failing to show a causal link.  A similar analysis and conclusion also apply to Ms. Naz's termination claim, which required her to allege that "'(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'"  *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citation omitted).

The District Court found that the first two factors were satisfied with respect to Ms. Naz.  She is a member of multiple protected classes:  race (Middle Eastern),

- 19 -

sex (female), religion (Islam), and national origin (Pakistani), and she was terminated by the Department.  But it found her Complaint "does not allege that her supervisors considered her protected characteristics during the termination process in any way."  AA314.  The District Court, for example, acknowledged that Dr. Perl discriminated against Ms. Naz in April 2018 when she told Ms. Naz "non-native people," like Ms. Naz, "have difficult" writing and asked Ms. Naz whether she attended school in the United States.  AA16 ¶ 11.  It nevertheless reasoned that, by "the time of her termination, Naz had transferred away from [Dr.] Perl and had been working under a different supervisor, Gross, for nearly two years."  AA315.

As with Ms. Naz's retaliation claim, the District Court's conclusion here ignores that Ms. Naz experienced a continuum of discrimination that extended for years, beginning with Dr. Perl's discovery of Ms. Naz's testimony against her in April 2018.  Ms. Naz had not experienced any criticisms from Dr. Perl or any of her prior supervisors over the course of her two-decade career, AA14 ¶ 5, AA16 ¶ 1, until, suddenly, Dr. Perl began to speak out against her.  *Id.* ¶ 8.  From that point until her termination, Ms. Naz faced a torrent of criticism and discrimination. AA16-22 ¶¶ 9-81.  Some of the ensuing discrimination from Dr. Perl explicitly implicated Ms. Naz's protected characteristics.  AA16 ¶ 11 (Dr. Perl's comments about "non-native people," like Ms. Naz).  Other incidents present a strong

- 20 -

indicium of discrimination.  AA19 ¶ 41 (Dr. Perl denying training because Ms. Naz might not be able to "comprehend the material").  Even after Dr. Perl was removed as her supervisor, Messrs. Turnure and Gross, her subsequent supervisors, continued the pattern of discrimination that led to Ms. Naz's termination.  AA19-21 ¶¶ 47, 50-56, 60-69.  That is, their discrimination was a continuation to Dr. Perl's earlier attacks.  As alleged, they were sympathetic to Dr. Perl and held ill-feelings toward Ms. Naz.  *Id.*

Again, the question is, would the "outcome change[]" if Ms. Naz was not subject to discrimination?  *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020).  Here, the answer is yes.  Had Dr. Perl not begun a discriminatory campaign against Ms. Naz, it could not have been later continued by Messrs. Turnure and Gross, and Ms. Naz would have never been terminated.  This is especially true given how Ms. Naz's negative reviews by this triumvirate built on each other over time and gave the Department the ultimate justification for terminating Ms. Naz.

## II.    THE DISTRICT COURT ERRED IN DISMISSING MS. NAZ'S FAILURE TO PROMOTE CLAIM

As a threshold problem, the District Court misinterpreted Ms. Naz's failure to promote claim.  It reasoned that the principal incident involved Mr. Gross denying Ms. Naz's salary increase to GS-12, Step 10, in January 2020.  AA315-16.  It also considered Ms. Naz's argument, raised in briefing, that her continual placement on performance improvement plans disqualified her from promotions

for which she could have and would have applied.  Erroneously, the District Court failed to acknowledge that Ms. Naz was also repeatedly denied transfers by Messrs. Turnure and Gross.  Denials of such transfers can also qualify as violations of Title VII.  *Chambers v. District of Columbia*, 35 F.4th 870, 872 (D.C. Cir. 2022).

Aside from that threshold misreading of the claim, the District Court wrongly dismissed Ms. Naz's salary increase claim because it found she failed to make out a *prima facie* case by showing that "'she sought and was denied a promotion for which she was qualified[ ] and that other employees of similar qualifications . . . were indeed promoted at the time the plaintiff's request for promotion was denied.'"  AA316 (quoting *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003)).  The District Court, however, acknowledged that Ms. Naz alleged that the salary increase from GS-12, Step 8 to GS-12, Step-10 should have been "automatic," AA21 ¶ 71, but found that this was not sufficient because her Complaint "does not mention any other employee who received that automatic promotion."  AA316.  Yet, because Ms. Naz alleged that the step increase was automatic, it reasonable to infer that *every* other employee who was eligible for that increase would have received it.  *Maljack Prods. Inc. v. Motion Picture Ass'n of Am. Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995).  Still, she did not receive it.  Thus, Ms. Naz has stated a *prima facie* case on this claim.

Regardless, Ms. Naz need not establish a *prima facie* case at all for her promotion claim to proceed, *see Stella v. Mineta*, 284 F.3d 135, 146 (D.C. Cir. 2002) (recognizing that prior decisions "created confusion on this point"), because she has alleged other facts sufficiently.  Here, as explained above, Ms. Naz has alleged a continuum of discrimination that extended for years.  *See supra* at 3-8.  As relevant to her salary increase claim, Ms. Naz filed an EEO complaint against Mr. Gross in October 2019, and three months later, in January 2020, Mr. Gross responded by denying what should have been an automatic salary increase.  AA21 ¶¶ 70-71.  *Prima facie* case requirements, this is sufficient to state a claim.

Additionally, the District Court rejected Ms. Naz's argument that placement on performance improvement plans disqualified her from promotions because, the District Court reasoned, supposedly the Department had a "legitimate reason" to prevent her from applying for promotions.  AA316.  Namely, the District Court cited purported underperformance.  In presenting a *prima facie* case, a plaintiff must address the "'two most common legitimate reasons on which an employer might rely . . . :  an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'"  *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 650-51 (D.C. Cir. 2003) (citation omitted).  Again, the District Court should have drawn inferences in Ms. Naz's favor.  *Maljack*, 52 F.3d at 375.  It is

- 23 -

reasonable to infer that Ms. Naz's sudden streak of poor performance resulted from the complaints of discrimination, not her own shortcomings.

## **CONCLUSION**

The District Court's decision to dismiss Ms. Naz's Complaint for failure to state a claim should be reversed, and the case should be remanded to the District Court for proceedings on the merits.

July 29, 2024

Respectfully submitted,

*/s/ Anthony F. Shelley*
Anthony F. Shelley
Cody F. Marden
Miller & Chevalier Chartered
900 Sixteenth St. NW
Washington, DC 20006
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email:  ashelley@milchev.com
　　　　cmarden@milchev.com

*Court-Appointed Amicus Curiae*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

**XX** this brief contains 5,596 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

___ this brief uses a monospaced typeface and contains [state the number of lines] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

**XX** this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point font in Times New Roman, or

___ this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

July 29, 2024                              */s/ Anthony F. Shelley*
                                                  Anthony F. Shelley

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 29, 2024, I electronically filed the foregoing

**BRIEF OF COURT-APPOINTED *AMICUS CURIAE* IN SUPPORT OF**

**APPELLANT** with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered CM/ECF users:

Fithawi Berhane
Jane M. Lyons
Johnny H. Walker
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, DC 20530
fithawi.berhane@usdoj.gov
jane.lyons@usdoj.gov
johnny.walker@usdoj.gov

I further certify that on July 29, 2024 I have mailed the foregoing document

by First-Class Mail, postage prepaid, to the following non-CM/ECF participants,

addressed as follows:

Farah Naz
13414 Ansel Terrace
Germantown, MD 20874

*Pro Se Appellant*

                                                    /s/ Anthony F. Shelley