ORAL ARGUMENT NOT YET SCHEDULED

No. 23-5237

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

FARAH NAZ,
Appellant,

v.

JENNIFER M. GRANHOLM,
Secretary of the Department of Energy,
Appellee.

On Appeal from the United States
District Court for the District of Columbia

## BRIEF FOR APPELLEE

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

JOHNNY H. WALKER
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2511

Civ. A. No. 22-1730        *Attorneys for the United States of America*

## CERTIFICATE AS TO
## PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**Parties and Amici.** The plaintiff-appellant is Farah Naz. The defendant-appellee is the Secretary of the Department of Energy. The Court has appointed Anthony Shelley as amicus curiae to present arguments in favor of the plaintiff-appellant's position.

**Ruling Under Review.** The plaintiff-appellant appeals from the September 30, 2023, memorandum opinion and order by Judge Dabney L. Friedrich granting the defendant-appellee's motion to dismiss or, in the alternative, for summary judgment. The opinion is available in the appendix of amicus (AA308) and on Westlaw, 2023 WL 6389130.

**Related Cases.** This case has not previously been before this Court. Undersigned counsel is unaware of any pending related cases.

**TABLE OF CONTENTS**

**Heading**                                                                    **Page**

Certificate as to  Parties, Rulings, and Related Cases..............................i

Table of Contents ..............................................................................ii

Table of Authorities.........................................................................iv

Glossary ..........................................................................................vii

Introduction....................................................................................... 1

Jurisdictional Statement..................................................................3

Statutes and Regulations.................................................................3

Statement of Issues ........................................................................3

Counterstatement of the Case ........................................................3

      A.     Naz's Performance Issues ......................................................4

      B.     Naz's Other Allegations .......................................................10

      C.     Procedural History ...............................................................11

Summary of the Argument ...........................................................15

Standard of Review ......................................................................19

Argument........................................................................................19

I.     Naz Fails to Plausibly Plead a Discrimination Claim...................19

      A.     Naz Fails to Plausibly Show that Any Denied "Promotion" Was Because of Discrimination. ...........................................21

           1.     Step Increase..........................................................21

2.    "Career Opportunities" ...............................................24

3.    Change of Supervisors ..............................................25

B.    Naz Fails to Plausibly Show that Her Termination Was Because of Discrimination. ..................................................26

II.    Naz Fails to Plausibly Plead a Retaliation Claim. ........................28

Conclusion ..................................................................................38

Certificate of Compliance .......................................................39

Certificate of Service ..............................................................39

Statutory and Regulatory Addendum ..................................... A

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................... 20, 28, 29, 34

*Baloch v. Kempthorne,*
550 F.3d 1191 (D.C. Cir. 2008) ................................................ 19, 26

*Banneker Ventures, LLC v. Graham,*
798 F.3d 1119 (D.C. Cir. 2015) ......................... 4, 5, 6, 7, 8, 9, 10, 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................... 20

*Bishop v. Dep't of Agric.,*
No. 20-5170, 2020 WL 660053 (D.C. Cir. Oct. 20, 2020) ................. 20

*Bridgeforth v. Jewell,*
721 F.3d 661 (D.C. Cir. 2013) ................................................. 34, 37

*Burlington N. & Santa Fe Ry. Co. v. White,*
548 U.S. 53 (2006) ........................................................................ 34

*Chambers v. District of Columbia,*
35 F.4th 870 (D.C. Cir. 2022) (en banc) .......................................... 20

*Clark Cnty. Sch. Dist. v. Breeden,*
532 U.S. 268 (2001) ......................................................... 31, 33, 36

*Gomez-Perez v. Potter,*
553 U.S. 474 (2008) ...................................................................... 29

*Hairston v. Vance-Cooks,*
773 F.3d 266 (D.C. Cir. 2014) ................................................... 27-28

*Hamilton v. Geithner,*
666 F.3d 1344 (D.C. Cir. 2012) ................................. 31-32, 32, 33, 35

*Ho v. Garland,*
106 F.4th 47 (D.C. Cir. 2024) ....................................................... 20

*Howard R.L. Cook & Tommy Shaw Found. ex rel.*
*Black Emps. of Libr. of Cong., Inc. v. Billington,*
  737 F.3d 767 (D.C. Cir. 2013) ........................................................ 29

*Babb v. Wilkie,*
  589 U.S. 399 (2020) ........................................................................ 30

*Kaempe v. Myers,*
  367 F.3d 958 (D.C. Cir. 2004) ........................................................ 23

*King v. Jackson,*
  487 F.3d 970 (D.C. Cir. 2007) ........................................................ 19

*Kowal v. MCI Commc'ns Corp.,*
  16 F.3d 1271 (D.C. Cir. 1994) ...................................................... 3-4

*Mitchell v. Baldrige,*
  759 F.2d 80 (D.C. Cir. 1985) .................................................... 31, 32

*Morris v. McCarthy,*
  825 F.3d 658 (D.C. Cir. 2016) .................................................. 26, 28

*Owens v. BNP Paribas, S.A.,*
  897 F.3d 266 (D.C. Cir. 2018) ........................................................ 23

*O'Neal v. Ferguson Constr. Co.,*
  237 F.3d 1248 (10th Cir. 2001) ...................................................... 31

*Pueschel v. Chao,*
  955 F.3d 163 (D.C. Cir. 2020) .................................................. 30, 31

*Spence v. Dep't of Veterans Affs.,*
  109 F.4th 531 (D.C. Cir. 2024) ...................................................... 30

*Taylor v. Small,*
  350 F.3d 1286 (D.C. Cir. 2003) ...................... 21, 22, 23, 24, 25, 34, 35

*United States v. TDC Mgmt. Corp.,*
  827 F.3d 1127 (D.C. Cir. 2016) ...................................................... 25

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
  570 U.S. 338 (2013) ........................................................................ 30

*Waterhouse v. District of Columbia,*
    298 F.3d 989 (D.C. Cir. 2002) ................................................... 26-27, 27

## Statutes & Regulations

28 U.S.C. § 1291 ........................................................................... 3

28 U.S.C. § 1331 ........................................................................... 3

29 U.S.C. § 633a(a) ................................................................. 30, 29

42 U.S.C. § 2000e-5(f)(3) ............................................................. 3

42 U.S.C. § 2000e-16(a) ...................................................... 30, 19, 29

44 U.S.C. § 1507 ........................................................................ 23

5 C.F.R. § 531.404(a) ............................................................. 23, 36

# GLOSSARY

AA .......................................................... Appendix of Amicus

## INTRODUCTION

Plaintiff Farah Naz worked for the Department of Energy as an Industry Economist, a position that required her to analyze energy data and write papers about energy consumption. Unfortunately, Naz continuously failed to meet the expectations of her supervisors, who found that Naz turned in work that was late or disregarded instructions and sometimes failed to complete assignments at all. As a result, Naz received unfavorable performance evaluations and was placed on a series of performance-correction measures. These actions rendered Naz ineligible for a salary increase and ultimately led to the termination of her employment after she persistently failed to improve her performance. Naz, through counsel, sought relief from the Merit Systems Protection Board and the Equal Employment Opportunity Commission, both of which found that the agency's actions were justified by Naz's unacceptable performance.

Naz then filed this civil action under Title VII of the Civil Rights Act of 1964. She claims that she was denied a "promotion" and was terminated because of her race, sex, religion, and national origin. She also claims that the Department of Energy retaliated against her for

participating in both her own and a colleague's equal-employment proceedings.

The district court correctly granted the defendant's motion to dismiss because Naz's complaint fails to allege sufficient facts to plausibly suggest that the agency's actions were motivated by anything other than Naz's inadequate performance. Naz's discrimination claims allege no facts that would demonstrate that the supervisor who allegedly denied her a "promotion" (actually a salary increase) and terminated her—Peter Gross—harbored any discriminatory biases or that his actions may have been pretextual. And Naz's retaliation claims fail to show that her supervisors knew of her participation in a colleague's discrimination complaint, that the complained-of actions were so temporally proximate to her protected activities as to create an inference of retaliatory causation, that her supervisors possessed a retaliatory motive, or that her supervisors' actions are pretextual.

The Court should therefore affirm the district court's order dismissing the case for failure to state a claim.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). The plaintiff timely appealed the district court's final order granting defendant's motion to dismiss or, in the alternative, for summary judgment. *See* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATUTES AND REGULATIONS

Pertinent statutory and regulatory provisions are reproduced in the addendum submitted herewith.

## STATEMENT OF ISSUES

In the opinion of the United States, the questions presented are:

1. Whether Naz has pleaded facts plausibly suggesting that either (a) the denial of any "promotion" or (b) the termination of her employment was caused by discrimination.

2. Whether Naz has pleaded facts plausibly suggesting that any materially adverse action was caused by retaliation.

## COUNTERSTATEMENT OF THE CASE

Because the district court resolved this case on the pleadings, this statement is based on the allegations in the complaint, which are accepted as true but not admitted, *Kowal v. MCI Commc'ns Corp.*,

16 F.3d 1271, 1273 (D.C. Cir. 1994), as "amplify[ied]" by documents in the record that were "referred to in the complaint" and "integral" to the claims, *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).

### A.   Naz's Performance Issues

On January 8, 2017, Farah Naz, a Muslim woman of Pakistani origin, began working as an Industry Economist in the Office of Energy Consumption and Efficiency Analysis at the Energy Information Administration, part of the Department of Energy. Compl. ¶¶ 1, 3, AA011, 16. The Office projects industrial energy-consumption trends and publishes its analyses for public use. AA034. Naz's direct supervisor at the time was Dr. Kelly Perl, and her second-level supervisor was James Turnure. *See* Compl. ¶ 14, AA017.

About nine months into her employment with the Department, in October 2017, Naz provided testimony in support of an administrative discrimination complaint filed against Perl by a colleague named Christopher Dickerson. *Id.* ¶ 4, AA016. Dickerson's employment with the Department ended in March 2018. *Id.* ¶ 7, AA016.

In late 2018, Naz's supervisors began taking formal corrective measures with respect to Naz's performance. The first target of these measures was a paper that Naz had drafted about irrigation in California. One of Naz's duties as an Industry Economist was to complete at least one ten-page paper during each annual performance period. *See* Compl. ¶ 26, AA018. To fulfill this requirement, in June 2018, Naz submitted the draft irrigation paper to Perl. *Id.* ¶ 25, AA018. Perl, however, informed Naz that the paper did not meet her expectations and directed Naz to make corrections, including adding citations for several unattributed, lengthy quotes from public sources. *Id.* ¶ 26, AA018.

Naz still had not improved the paper to Perl's satisfaction by November 2018, so Perl informed Naz that she would be placed on a performance improvement plan. *Id.* ¶¶ 28, 31. On December 3, 2018, Perl implemented the plan and ended Naz's ability to telework. *Id.* ¶¶ 33–34, AA018. The plan was suspended, however, after Naz filed a grievance with her union. *Id.* ¶¶ 36–37, AA019. On January 16, 2019, Naz received a performance rating of "fails to meet expectations" for fiscal year 2018

due to her ongoing problems with the California irrigation paper. *Id.* ¶ 39, AA019; *see also* 2018 Performance Appraisal, AA265.[1]

Around March 2019, Perl took a new position outside Naz's supervisory chain; then, on April 24, 2019, Turnure reissued the December 2018 performance improvement plan and again suspended Naz's ability to telework. Compl. ¶¶ 47, 52–54, 57, AA019–20. The reissued plan enumerated several deficiencies in Naz's still-incomplete irrigation paper. Among other things, the plan noted that Naz's June 2018 draft had been "mostly composed of material pasted verbatim from the internet" with "no attribution" to sources, misleading the reader to think that the material "was [Naz's] work when in fact it was not." Performance Improvement Plan at 2, AA287. The plan recounted that these attribution problems persisted in Naz's subsequent draft, submitted in September 2018, with "sources not fully attributed," "two

---

[1]    Amicus asserts that the writing element was "just 20% of [Naz's] annual evaluation." Amicus Br. at 5. But Naz's evaluation shows that a rating of "fails to meet expectations" in any one element (however weighted) resulted in an overall summary rating of "fails to meet expectations." *See* Performance Plan and Appraisal, AA271. Naz's failure to meet expectations in the writing element was therefore more consequential than amicus's characterization implies.

verbatim paste-ins," "incorrect attribution," and "unattributed paraphrasing." *Id.*, AA287. The performance improvement plan set forth step-by-step instructions for Naz to follow over the next four weeks, with a final draft of the paper due two weeks before the end of the 90-day performance-improvement period. *Id.* at 3, AA288.

The performance improvement plan did not result in the termination of Naz's employment. But issues with her performance persisted after Peter Gross became Naz's new first-line supervisor in June 2019. Compl. ¶¶ 60–66, AA020–21. Under Gross's supervision, Naz received another rating of "fails to meet expectations" for the fiscal year 2019 performance period. *Id.* ¶ 69, AA021. Naz blames her performance issues on Gross for scheduling meetings on her "busy working days," sending "long emails," and setting "unrealistic deadlines." *Id.* ¶¶ 74–76, AA021.

On April 28, 2020, Gross issued Naz a memorandum instituting a performance demonstration period. Compl. ¶ 73, AA021. The memorandum informed Naz that her performance had failed to meet expectations since January 27, 2019, and listed several assignments that Naz had done incorrectly, turned in late, or failed to complete.

Performance Demonstration Period Memorandum at 1, AA135. For example, the memorandum recounted that, in December 2019, Naz was over a month late completing a regression analysis of data about coal consumption, and, even then, performed the regression on the wrong variables, rendering her analysis useless. *Id.* at 2–3, AA136–37. When Gross pointed out to Naz that she had regressed the wrong variables, according to the memorandum, Naz told Gross to redo the analysis himself. *Id.* As another example, the memorandum stated that, in late February 2020, Naz was assigned to provide two different data analyses to prepare Gross for a March 12, 2020, conference about fuel oil and kerosene sales, but Naz failed to complete either analysis, which left Gross less prepared for the meeting. *Id.* The memorandum set forth specific future assignments—with specific instructions, standards, and due dates and times—that Naz would have to fulfill to improve her performance to the "meets expectations" level. *Id.* at 8–11, AA142–45.

Naz's performance, however, did not improve to Gross's satisfaction. On August 13, 2020, he provided Naz with a notice of proposed removal. Compl. ¶ 78, AA022. The notice explained that Naz had failed to complete several assignments during the performance

demonstration period at the "meets expectations" level. Notice of Proposed Removal at 1–4, AA156–59. For example, the notice stated that, for one assignment, Naz failed to employ critical data in the analysis, as she had been instructed to do, and another assignment was plagued by "incorrect calculations" and "confusing and improper labeling" of documents. *Id.* at 3, AA158. The notice also mentioned that Naz had refused to attend several progress meetings that were meant to give Naz the opportunity to ask any questions or seeks clarifications about her assignments. *Id.* at 2, AA157.

After receiving Naz's written and oral responses to the proposed removal, on January 29, 2021, Lynn Westfall, a director in the Energy Information Administration, concurred with Gross's proposal and removed Naz from federal service. Compl. ¶ 81, AA022. Westfall concluded that Gross provided specific instructions for the assignments in the performance demonstration period, but Naz failed to follow those instructions and her work contained inaccuracies and errors. Decision on Notice of Proposed Removal at 1–3, AA162–64. Naz's employment with the Department of Energy ended at the close of business that day. *Id.* at 3, AA164.

### B.    Naz's Other Allegations

Naz takes issue with several other actions by her supervisors, in addition to the performance-based actions described above.

First, she claims that, in April 2018, Perl "screamed at and threatened to fire" her over a hotel reservation that Naz had booked for herself for a conference in Florida. Compl. ¶ 12, AA017. Naz believes that Perl's alleged objection to the booking was "unfounded." *Id.* ¶ 13, AA017. Earlier that same month, Naz claims that Perl remarked that "non-native people" can "have difficulty" writing and asked whether Naz was educated in the United States. *Id.* ¶ 11, AA016. These alleged interactions with Perl prompted Naz to seek reassignment to a different supervisor, but Naz claims that Perl intervened to prevent a reassignment. *Id.* ¶ 14–16, AA017.

Second, Naz alleges that, in October 2018, she asked Perl to nominate her for an "innovation award," but Perl declined. Compl. ¶¶ 17–22, AA017.

Third, Naz alleges that, in November 2018, Perl denied Naz's request for leadership training, Compl. ¶ 24, AA018, as well as her repeated requests for various levels—introductory, intermediate, and

advanced—of Excel training, *id.* ¶¶ 23, 40–44, 46, 48, AA018–19, at one point telling Naz that she "could not comprehend" the material in the advanced class, *id.* ¶ 46, AA019. Perl purportedly denied Naz the ability to attend one of the Excel courses by refusing to reschedule a meeting, which Naz says she characterized as "retaliation" and as a "persistent hostile and discriminatory work environment." *Id.* ¶ 43, AA019.

Fourth, Naz alleges that, in March 2019, Perl raised her voice and slammed her hand on a table during a conversation where Perl accused Naz of "excessive frowning" during a meeting. Compl. ¶ 45, AA019.

Fifth, in January 2020, Gross denied Naz an "automatic" step increase, which would have raised Naz's salary. Compl. ¶ 71, AA021.

## C.    Procedural History

Naz filed formal complaints of discrimination in December 2018, October 2019, and December 2020. Compl. ¶¶ 35, 70; Final Agency Decision at 1, AA237. After her claims were investigated and denied by the Department of Energy, she sought a hearing before the Merit Systems Protection Board. On September 3, 2021, the Board decided in favor of the agency, finding "substantial evidence that [Naz's] performance was unacceptable." MSPB Decision at 38, AA121. Naz then

took her case to the Equal Opportunity Employment Commission, which on May 22, 2022, likewise concluded that the "record supports the [Department's] explanation that [Naz] failed to improve despite ongoing communication regarding performance deficiencies." EEOC Decision at 4, AA133.

Naz filed this action on June 16, 2022, bringing claims exclusively under Title VII of the Civil Rights Act of 1964. AA001. She claims that the Department (1) terminated her and (2) failed to promote her on account of her race, sex, religion, and national origin, and that it (3) retaliated against her in various ways for engaging in protected activity. Compl., AA011; *see also* Amicus Br. at 9. The Department moved to dismiss or, alternatively, for summary judgment. R.16.

The district court granted the Department's motion and dismissed Naz's complaint for failure to state a claim. Mem. Op. at 1, AA308. Regarding Naz's termination, the district court concluded that Naz failed to allege facts plausibly showing that discrimination—rather than poor performance—was the reason she was removed from her position. *Id.* at 7. AA314. The district court noted that Naz had neither alleged differential treatment of a similarly situated employee outside of her

protected class nor otherwise alleged any facts suggesting that "her supervisors considered her protected characteristics during the termination process in any way." *Id.*, AA314. The court considered Perl's alleged April 2018 remark about writing by "non-native people," but concluded that Perl's comment was disconnected from Gross's decision to propose Naz's termination over two years later. *Id.* at 8, AA315.

The district court next rejected the failure-to-promote claim. The court noted that Naz's complaint failed to "explain when this failure to promote occurred," but inferred from context that this claim must refer to the alleged denial of a step increase in January 2020. Mem. Op. at 8, AA315. Regarding that denied step increase, the district court concluded that the complaint failed to support a reasonable inference of discrimination because it contained no allegations that Naz qualified for the "promotion" or that other employees of similar qualifications from outside of Naz's protected class received one. *Id.*, AA315.

Finally, as to retaliation, the district court concluded that Naz failed to allege a causal link between her protected activity—i.e., providing testimony for Dickerson and filing her own discrimination complaints—and any materially adverse action. Mem. Op. at 10, AA317.

Construing Naz's complaint "liberally," the district court regarded Naz to have alleged retaliation as to her termination, the denials of training, the denial of telework, and Gross's "management style." *Id.*, AA317. The district court noted that Naz's protected activity and the challenged actions were not close enough in time to infer causation and that Naz had begun receiving negative feedback on her work long before she filed a discrimination complaint. *Id.* at 11, AA318. The district court noted that Naz's complaint "contains *no* facts that suggest the Department has a retaliatory motive" and even failed to allege that her supervisors had knowledge of certain of her protected activity at the time that they took some of the challenged actions. *Id.* (emphasis in original). Instead, the district court opined that Naz's complaint "tells a familiar story of disciplinary sanctions following repeated instances of substandard work." *Id.* at 12, AA319. The district court therefore granted the motion to dismiss and denied the alternative motion for summary judgment as moot. Order, AA321.

This appeal followed. This Court denied the government's motion for summary affirmance and appointed amicus curiae to present

- 14 -

arguments in favor of Naz's position that amicus determines are potentially meritorious. Order, AA322–23.

## SUMMARY OF THE ARGUMENT

Naz fails to plead facts plausibly showing that either the alleged denial of a "promotion" or her termination were because of discrimination on account of her race, sex, religion, or national origin.

It is not clear what "promotion" Naz claim to have been denied, but the government assumes, as did the district court, that Naz refers to the alleged denial of a step increase that would have raised her salary. That claim fails, however, because Naz did not allege as she must that other employees with "similar qualifications" received a step increase. Contrary to amicus's argument, Naz does not satisfy this requirement merely by characterizing the step increase as "automatic," because that says nothing about whether Naz possessed the same qualifications as other employees who received a step increase, if any.

Further, federal-employment regulations, of which the Court can take judicial notice, demonstrate that employees with poor performance ratings, which Naz's allegations admit that she had, are ineligible for step increases until their performance improves.

Naz's "promotion" claim fails even if construed to include the missed "career opportunities" referenced in Naz's opposition to the defendant's motion to dismiss below. The vague reference to unspecified missed opportunities does not supply the requisite factual matter for a plausible claim. Amicus presents no argument to the contrary that is actually directed to Naz's allegation of discriminatory failure to promote.

Amicus also attempts to inject new claims for the first time on appeal by arguing that the district court should have construed the "promotion" claim to include Naz's unfulfilled requests to have a new supervisor. Amicus, however, leaves this argument woefully undeveloped by failing to cite anything in the record supporting such an interpretation of Naz's "promotion" claim. More critically, amicus provides no argument and identifies no supporting allegations demonstrating that the denial of a new supervisor was because of Naz's race, sex, religion, or national origin.

Naz also fails to plausibly allege that the termination of her employment was because of her race, sex, religion, or national origin. She recounts a single remark in April 2018 by her then-supervisor, Perl, about the writing of non-native people. But any such remark by Perl is

unconnected to the years-later decision by a different supervisor, Gross, to propose Naz's removal or to the decision by Westfall to adopt that proposal.

Amicus purports to find an "indicum of discrimination" in another alleged statement by Perl that Naz would be unable to comprehend the content of an "advanced" course in Excel. But there is no plausible connection between Perl's assessment that Naz lacked the prerequisite proficiency for an advanced Excel course and any of Naz's protected characteristics. In any event, this statement too is unconnected to the much-later decisions by others to terminate Naz's employment.

Amicus's only other argument on this point is conclusory and underdeveloped, with no citation to anything in the complaint demonstrating discriminatory bias on the part of Gross or Westfall or any pretext in their performance-based reasons for terminating Naz's employment.

Naz also fails to sufficiently allege that any materially adverse action was caused by retaliation. A plaintiff can sometimes establish an inference of retaliation where an adverse action follows very close in time after protected activity, but Naz's allegations fail in this respect. The

- 17 -

adverse actions that could conceivably form the basis for her retaliation claim are too temporally remote from any alleged protected activity. And with respect to her one-time protected activity in support of her colleague, Dickerson, she fails even to allege facts showing that her supervisors knew of that activity. The complaint also fails to establish an inference of causation with respect to Naz's own discrimination complaints, which were filed only after the agency had already rated her performance as deficient and had begun measures to correct it. No reasonable inference of retaliatory causation may be drawn where an agency proceeds on a course of action begun before the filing of a discrimination complaint.

Amicus fails to identify any error in the district court's dismissal of the retaliation claim. First, amicus assumes that Perl became aware of Naz's protected activity in April 2018 based entirely on Perl allegedly becoming upset over a hotel booking and making a remark about writing by "non-native people," but neither of those comments plausibly show Perl's awareness of protected activity. Moreover, Perl's actions in April 2018 are not temporally proximate to any materially adverse action.

Second, amicus asserts that a "holistic" reading of the complaint supports inferring a connection between unspecified adverse actions that

- 18 -

Naz experienced and Perl purportedly learning of Naz's protected activity in support of Dickerson in April 2018. This conclusory argument is unsupported by any plausibly pleaded factual allegations. Moreover, it depends on the unsupported assumption that Perl learned of Naz's protected activity in April 2018.

The Court should affirm the dismissal of Naz's discrimination and retaliation claims.

## STANDARD OF REVIEW

This Court reviews the district court's grant of defendant's motion to dismiss de novo. *King v. Jackson*, 487 F.3d 970, 972 (D.C. Cir. 2007)

## ARGUMENT

### I.   <u>Naz Fails to Plausibly Plead a Discrimination Claim.</u>

Title VII requires that federal-government "personnel actions" be made "free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The "two essential elements" of a Title VII discrimination claim are that "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true" to "plausibl[y]" establish the two key elements of a discrimination claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) ("If a Title VII plaintiff fails to plead 'sufficient factual matter' to state a claim of discrimination that is 'plausible on its face,' then the district court should dismiss the case before discovery."); *Bishop v. Dep't of Agric.*, No. 20-5170, 2020 WL 660053, at *1 (D.C. Cir. Oct. 20, 2020) (summarily affirming dismissal of a discrimination claim where the plaintiff "did not allege a plausible set of facts to raise an inference of discrimination"). This standard applies even to pro se plaintiffs like Naz. *See Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) ("Pro se complaints must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Iqbal*, 556 U.S. at 678–79)).

For her discrimination claims, Naz plausibly alleges that she suffered two adverse personnel actions: a denied "promotion" and the termination of her employment. Compl. at 5, AA011. But Naz fails to

satisfy the second essential element of her claims because does not allege facts plausibly showing that either adverse personnel action was taken because of her race, sex, religion, or national origin.

### A. Naz Fails to Plausibly Show that Any Denied "Promotion" Was Because of Discrimination.

Naz fails to plead facts plausibly showing that any denied "promotion" was because of her race, sex, religion, or national origin. To make out a failure-to-promote claim, "the plaintiff must show that she sought and was denied a promotion for which she was qualified, and that other employees of similar qualifications were indeed promoted at the time the plaintiff's request for promotion was denied." *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003) (citation omitted).

#### 1. Step Increase

As the district court noted, it is unclear from Naz's complaint precisely what "promotion" she claims to have been denied. Mem. Op. at 8, AA315. Naz checked a box on her complaint form indicating a discriminatory "failure to promote," Compl. at 5, AA011, but the narrative portion of her pleading does not identify any specific conduct related to that claim. The district court nevertheless generously construed Naz's failure-to-promote claim as referring to the step increase

- 21 -

that she did not receive in January 2020. Mem. Op. at 8, AA315. As the district court noted, however, the complaint provides no factual allegations that would indicate that the step increase was denied because of Naz's membership in a protected class. *Id.* at 9, AA316. Most critically, the complaint does not allege that "other employees of similar qualifications" as Naz received the step increase that year—a core element of a failure-to-promote claim. *See id.* (quoting *Taylor*, 350 F.3d at 1294).

Amicus contends that Naz's allegations suffice merely because they characterize the step increase as "automatic," which amicus says supports an inference that "*every* other employee who was eligible for that increase would have received it." Amicus Br. at 22 (emphasis in original). This does not address the complaint's deficiency. Merely characterizing the step increase as "automatic" says nothing about whether employees with "similar qualifications" as Naz received an increase. *Taylor*, 350 F.3d at 1294. As amicus acknowledges, only "eligible" employees would have received an increase. Amicus Br. at 22. But Naz pleads nothing to show that she herself met the eligibility requirements.

In fact, matters subject to judicial notice show that Naz was not eligible for a step increase. While Naz's complaint characterizes the step increase as "automatic," a court need not "accept as true the complaint's factual allegations insofar as they contradict . . . matters subject to judicial notice." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272–73 (D.C. Cir. 2018) (quoting *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)). Federal regulations, which are subject to judicial notice, 44 U.S.C. § 1507, show that, to qualify for a step increase, an employee must satisfy three criteria, including, relevant here, that the "employee's performance must be at an acceptable level," meaning that the employee was rated at least at a "fully successful" level during the most recent performance period. 5 C.F.R. § 531.404(a). Naz acknowledges, however, that on September 18, 2019, she received a rating of "fails to meet expectations" for the performance period preceding the step increase. Compl. ¶ 69, AA021. Naz was therefore plainly not denied a promotion "for which she was qualified." *Taylor*, 350 F.3d at 1294.

In sum, Naz's failure-to-promote claim with respect to the step increase fails both because she did not adequately allege discrimination,

and because facts subject to judicial notice show that she was not qualified for a step increase.

2.    "Career Opportunities"

The district court also noted, Mem. Op. at 9, AA316, that Naz argued in her opposition to the government's motion to dismiss that the performance-correction measures implemented by the agency "disqualified [her] from applying to many timely sensitive career opportunities to move on," R.23 at 65. The district court correctly dismissed any such claim. Mem. Op. at 9, AA316. For one thing, Naz's vague and conclusory reference to unspecified missed "career opportunities" does not supply the requisite "factual matter" to plead a plausible claim. There are no alleged facts showing that Naz "sought and was denied" a particular promotion, that she "qualified," or that "other employees of similar qualifications" were promoted. *Taylor*, 350 F.3d at 1294.

Amicus presents no argument in support of any discrimination claim related to a denial of unspecified "career opportunities." Instead, amicus deflects. First, amicus asserts that Naz has "alleged other facts sufficiently," namely those related to a separate claim that the denial of

a step increase was retaliatory. Amicus Br. at 23 (arguing that the step increase was denied three months after Naz filed a discrimination claim against Gross). Amicus also asserts (without exposition or citation to supporting allegations) that Naz's "sudden streak of poor performance resulted from the complaints of discrimination." *Id.* at 23–24. But both arguments relate not to discrimination but to retaliation (which is addressed below), and the first relates to the step increase, not to any missed "career opportunities." Thus, neither argument provides a reason for the Court not to affirm the district court's dismissal of Naz's claims insofar as she alleges a discriminatory denial of "career opportunities."

### 3. Change of Supervisors

Amicus also asserts that the district court "misinterpreted" Naz's failure to "promote" claim because it did not construe it to include Naz's unsuccessful requests to change supervisors. Amicus Br. at 21–22. This argument is so undeveloped as to be forfeited. *See United States v. TDC Mgmt. Corp.*, 827 F.3d 1127, 1130 (D.C. Cir. 2016). Amicus identifies nothing in the record to indicate that a change of supervisors would have constituted a "promotion." More critically, amicus presents no argument that Naz's request for a supervisor change was denied because of Naz's

race, sex, religion, or national origin. Amicus therefore provides no reason to reverse on this point.

### B.    Naz Fails to Plausibly Show that Her Termination Was Because of Discrimination.

Naz fails to plead sufficient factual matter to show that the agency terminated her employment "because of [her] race, . . . religion, sex, [or] national origin." *Baloch*, 550 F.3d at 1196. As the district court noted, Naz's complaint "does not allege that her supervisors considered her protected characteristics during the termination process in any way." Mem. Op. at 20, AA314. Nor does she provide any allegations indicating that the performance-based reasons for her termination were pretextual.

The closest Naz comes to alleging discrimination is to assert that, in April 2018, Perl remarked that "non-native people" "have difficulty" writing and asked if Naz had been educated in the United States. Compl. ¶ 11, AA016. Even assuming Perl made such a remark and that a reasonable jury could find it indicative of discriminatory animus, as a general matter, such an "isolated . . . remark unrelated to the relevant employment decision [can] not, without more, permit a jury to infer discrimination." *Morris v. McCarthy*, 825 F.3d 658, 669–70 (D.C. Cir. 2016) (citing *Waterhouse v. District of Columbia*, 298 F.3d 989, 996–97

(D.C. Cir. 2002)). That is particularly true here, because the supervisor who made the remark—Perl—is not the same supervisor who made the decision to propose Naz's termination—Gross—or the same official who adopted to proposal to terminate—Westfall. Compl. ¶¶ 78–81, AA022. Indeed, when Gross proposed Naz's termination in August 2020, Perl had been out of Naz's supervisory chain and uninvolved with corrections to her performance for over a year. *Id.* ¶¶ 47, 78, AA019, 22. And Naz provides no allegations that either Gross or Westfall themselves harbored a discriminatory bias.

Amicus also asserts that there is a "strong indicium of discrimination" in Perl's statement that Naz could not "comprehend the material" in an Excel class. Amicus Br. at 21 (quoting Compl. ¶ 41, AA019). As Naz's allegations show, however, that statement was made with respect to an "advanced" Excel training, Compl. ¶ 41, AA019, when Naz had not completed intermediate-level courses, *see id.* ¶¶ 42, 44, AA019. Any statement by Perl that Naz lacked the prerequisite preparation for advanced training in Excel would have been neither "explicitly" discriminatory nor "infused with" discriminatory "undertones." *Hairston v. Vance-Cooks*, 773 F.3d 266, 274 (D.C. Cir.

2014). And, as with the statement about non-native writing ability, it bears no connection to the years-later decision by entirely different supervisors to terminate Naz's employment. *See Morris*, 825 F.3d at 669–70.

Amicus's only other argument on the discriminatory-termination claim is conclusory and unsupported. Unable to identify any indication of discriminatory bias on the part of the persons who decided to terminate Naz or any indication of pretext in the termination decision itself, amicus instead makes the conclusory assertion that Naz experienced a "continuum of discrimination" since Perl's April 2018 comments and that Turnure and Gross "continued the pattern of discrimination." Amicus Br. at 20–21. But simply labeling unfavorable treatment as part of a "pattern of discrimination," *id.*, does not supply the "factual matter" necessary to plausibly plead a discrimination claim, *Iqbal* 556 U.S. at 678. Amicus's conclusory assertions do not demonstrate that Naz's complaint satisfies the federal pleading standard.

## II.  Naz Fails to Plausibly Plead a Retaliation Claim.

The Supreme Court has not yet decided whether Title VII's prohibition on federal-sector discrimination also prohibits retaliation for

- 28 -

protected activity. In *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008), however, the Court held that a requirement that federal personnel actions be "free from any discrimination based on age" in the Age Discrimination in Employment Act included "retaliation based on the filing of an age discrimination complaint." *Id.* (citing 29 U.S.C. § 633a(a)). The government therefore assumes the availability of a federal-sector retaliation claim under the similar provision in Title VII. *See* 42 U.S.C. § 2000e-16(a) (requiring that federal personnel actions "be made free from any discrimination based on race, color, religion, sex, or national origin").

To state a retaliation claim, a complaint must allege sufficient facts to "plausibly establish [the] three elements" of such a claim, which are: "(1) that an employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (citing *Iqbal*, 556 U.S.

at 678).[2] Naz's retaliation claim was properly dismissed because her complaint falls short of establishing the third element: causation. *See Spence v. Dep't of Veterans Affs.*, 109 F.4th 531, 540 (D.C. Cir. 2024) (affirming the dismissal of a retaliation claim where the plaintiff "failed to plead facts showing the causal link between her termination and her protected activity"); *Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020) (affirming the dismissal of a retaliation claim where the allegations "prevent[] the court from drawing a reasonable inference of causality").

---

[2] Amicus assumes that a "but-for" causation standard applies to federal-sector retaliation claims under Title VII because the Supreme Court has applied that standard to private-sector retaliation claims under Title VII. Amicus Br. at 14 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013)). In the government's view, the appropriate causation standard for Title VII retaliation claims is the one articulated by the Supreme Court in *Babb v. Wilkie*, 589 U.S. 399 (2020), which construed language in the federal-sector provision of the Age Discrimination in Employment Act that is very similar in relevant respects to language in the federal-sector provision of Title VII. *Compare* 29 U.S.C. § 633a(a), *with* 42 U.S.C. § 2000e-16(a). Applying the *Babb* standard, the protected activity "must be the but-for cause of differential treatment" of the employee, but the differential treatment need not be "a but-for cause of the ultimate decision," so long as it played some part in the decision that was made. 589 U.S. at 407–08. But-for causation is required, however, for an employee to obtain "relief related to the end result of an employment decision," such as "reinstatement, backpay, [or] compensatory damages." *Id.* at 413. In any event, the Court need not decide the appropriate causation standard in this case because Naz fails to allege facts supporting a causal inference under either standard.

In some circumstances, a plaintiff can plausibly allege an inference of retaliation by showing that the relevant decisionmakers "had knowledge of [her] protected activity, and that the adverse personnel action took place shortly after that activity[,]" *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985); *see also Pueschel*, 955 F.3d at 167 (affirming the dismissal of a retaliation claim where "the lack of temporal proximity prevents the court from drawing a reasonable inference of causality when no additional factual allegations support causation"). To support a retaliatory inference, the temporal proximity between the protected activity and the adverse action "must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). Although this Court has not adopted a "bright line rule," it has observed that the Supreme Court in *Breeden* cited "approvingly cases where three- and four-month intervals were found insufficient to infer causality between the protected activity and the adverse employment action" and that this Court "has often analyzed temporal proximity in terms of months—not years." *Pueschel*, 955 F.3d at 163; *see also Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) ("Although the Supreme Court has cited circuit

decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation, neither the Supreme Court nor this court has established a bright-line three-month rule.").

As the district court correctly observed, Naz's alleged protected activities are not "very close" in time to her termination. She provided testimony for Dickerson nearly three years before her termination, and her own complaints of discrimination were filed about two years and over one year, respectively, before her termination. Mem. Op. at 11, AA318. In all cases, the adverse action followed the protected activity well past the three-to-four-month mark where this Court has been unwilling to infer causation. *See Hamilton*, 666 F.3d at 1357–58.

Naz also failed to establish temporal proximity between her protected activities and any adverse actions other than her termination. With respect to Naz's testimony for Dickerson, Naz fails to make the predicate showing, as she must, that her supervisors "had knowledge of [that] protected activity." *Mitchell*, 759 F.2d at 86. And even were such knowledge plausibly established, more than six months lapsed between

Naz's testimony for Dickerson and "the earliest inklings" of any challenged adverse action. Mem. Op. at 11, AA318. Again, even three to four months is generally too long to infer a causal connection, *Hamilton*, 666 F.3d at 1357–58, so it should not be inferred on these allegations.

With respect to Naz's own discrimination complaints, she is unable to establish a causal inference based on temporal proximity with the performance-improvement measures because the agency began taking those measures before Naz filed complaints. Naz filed her first complaint on December 14, 2018, only after Perl informed her that her California irrigation paper failed to meet expectations, placed her on a performance improvement plan, and removed her ability to telework. Compl. ¶¶ 28, 33–35, AA018–19. As the Supreme Court has observed, an employer "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Breeden*, 532 U.S. 268, 272 (2001). Thus, there is no basis to infer that the agency's efforts to correct Naz's performance were motivated by her discrimination complaints, when it began taking those actions before she filed those complaints.

Amicus makes two attempts to assign error to the district court's dismissal of Naz's retaliation claim, neither of which carries the day. First, amicus contends that the district court should have inferred that Perl became aware of Naz's October 2017 testimony for Dickerson in April 2018 based entirely on Naz's allegation that April 2018 is when Perl allegedly became upset with Naz about a hotel booking and made a comment about the writing aptitude of "non-native people." Amicus Br. at 17–18. But neither of those instances bear any "plausible" relationship to Naz's protected activity and therefore do not provide any indication that Perl became aware of the activity at that time. *Iqbal*, 556 U.S. 662, 678.

Moreover, Perl's alleged ire at the hotel booking and remark about "non-native people" do not themselves constitute "materially adverse actions" about which a plaintiff can sue for retaliation. At most, they are "petty slights or minor annoyances," not the sort of "significant change in employment status" that may form the basis for a retaliation claim. *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and *Taylor*, 350 F.3d at 1293). And amicus identifies no other materially

adverse action that occurred close in time to April 2018. The only conceivable candidate would be Perl's negative response to Naz's request that Perl nominate her for an innovation award. Compl. ¶ 22, AA017. But even assuming that action was "materially adverse," it did not occur until October 16, 2018, *id.*—six months after amicus assumes that Perl learned of Naz's testimony for Dickerson. Again, that amount of time is too great to support a causal inference. *See Hamilton*, 666 F.3d at 1357–58.

Amicus's attempts to connect other purported "close-in-time reprisals" to Naz's December 2018 and October 2019 discrimination complaints also fail.[3] Amicus first argues that Naz received a negative performance evaluation in January 2019, soon after her December 2018 complaint. Amicus Br. at 18. But Naz's allegations show that Perl informed Naz a month earlier, in November 2018, that she would not earn a "meets expectations" rating and then placed her on a performance improvement plan in early December, all before Naz filed the complaint. Compl. ¶¶ 28, 33, 35, AA018–19. As noted above, there is no causal

---

[3]    Amicus's brief says that the discrimination complaint was filed in January 2020, but that appears to be a typographical error. The cited portion of the complaint alleges that it was filed in October 2019. *See* Compl. ¶ 70, AA021.

inference to be drawn from an agency "proceeding along lines previously contemplated." *Breeden*, 532 U.S. at 272. Put another way, the agency is not required to change its view of Naz's performance or cease its efforts to improve it merely because she filed a discrimination complaint.

Amicus's reference to Gross's January 2020 denial of a step increase suffers the same flaw. As noted above, this Court should take judicial notice that Naz became ineligible for a step increase when her performance was rated as less than fully successful. *See supra* at 23 (citing 5 C.F.R. § 531.404(a)). That less-than-fully-successful rating was assigned in September 2019, before she filed the October 2019 complaint. Compl. ¶ 69, AA021. Again, the agency need not change Naz's rating and render her eligible for an increase merely because she filed a discrimination complaint, and the fact that the agency did not do so is no basis from which to infer retaliatory causation. *Breeden*, 532 U.S. at 272.

Amicus also notes that Perl denied Naz the opportunity to take various Excel trainings in the months following Naz's filing of the December 2018 discrimination complaint. Amicus Br. at 18 (citing Compl. ¶¶ 40–41, AA019). But Naz makes no allegation—and amicus provides no argument—that the denied Excel trainings resulted in the

kind of "significant change in employment status" necessary to constitute actionable reprisal. *Bridgeforth*, 721 F.3d at 663.

Second, amicus urges the Court to view the complaint "holistically" and find that Naz "suffered a 'sea change at work when Dr. Perl learned of her testimony." Amicus Br. at 19 (quoting Compl. ¶ 8, AA016). But this argument is conclusory and undeveloped. It identifies no allegations in the complaint supporting a retaliatory motive by Naz's supervisors or any indications of pretext in their actions. Moreover, the cursory argument depends entirely on amicus's flawed assumption—based only on Perl's alleged anger about the hotel and the "non-native people" comment—that Perl learned about Naz's testimony for Dickerson in April 2018, the time when Naz alleges that the supposed "sea change" occurred. Compl. ¶ 8, AA016. For the reasons explained, that is a faulty premise.

In sum, Naz does not allege sufficient facts from which to plausibly infer retaliatory causation, and each of amicus's attempts to temporally juxtapose protected activity with a materially adverse action fails. The district court's dismissal of the retaliation claim should be affirmed.

\* \* \*

- 37 -

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

*/s/ Johnny Walker*

JOHNNY H. WALKER
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2511

*Attorneys for the United States of America*

Dated: October 16, 2024

**CERTIFICATE OF COMPLIANCE**
(Fed. R. App. P. 32(a)(7)(B))

This brief is prepared using 14-point Century Schoolbook, a proportionally spaced font and—omitting those items described in Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1)—contains 7,254 words as counted by Microsoft Word 365.

*/s/ Johnny Walker*
JOHNNY H. WALKER
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that on this 16th day of October, I caused a true and correct copy of the above brief to be served upon amicus by filing the brief using the Court's ECF system. I also caused a copy to be served on appellant by mail to the following address:

FARAH NAZ
13414 Ansel Terrace
Germantown, Maryland 20874

*/s/ Johnny Walker*
JOHNNY H. WALKER
Assistant United States Attorney

# STATUTORY AND REGULATORY ADDENDUM

## 42 U.S.C. § 2000e-16(a)

**(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage.**

All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, in executive agencies as defined in section 105 of title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Publishing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

- B -

## 5 C.F.R. § 531.404

**Earning within-grade increase.**

An employee paid at less than the maximum rate of the grade of his or her position shall earn advancement in pay to the next higher step of the grade or the next higher rate within the grade (as defined in § 531.403) upon meeting the following three requirements established by law:

(a) The employee's performance must be at an acceptable level of competence, as defined in this subpart. To be determined at an acceptable level of competence, the employee's most recent rating of record (as defined in § 430.203 of this chapter) shall be at least Level 3 ("Fully Successful" or equivalent).

(1) When a within-grade increase decision is not consistent with the employee's most recent rating of record a more current rating of record must be prepared.

(2) The rating of record used as the basis for an acceptable level of competence determination for a within-grade increase must have been assigned no earlier than the most recently completed appraisal period.

(b) The employee must have completed the required waiting period for advancement to the next higher step of the grade of his or her position.

(c) The employee must not have received an equivalent increase during the waiting period.

- C -